IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CREDIT SUISSE SECURITIES (USA) § | | |
| LLC and VLS SECURITIES LLC, § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-13-1260 | |
| § | | |
| DEBRA SIMS, § | | |
| Defendant. § | | |

## MEMORANDUM AND ORDER

In this declaratory judgment action, Plaintiffs Credit Suisse Securities (USA) LLC ("Credit Suisse") and VLS Securities LLC ("VLS") seek a ruling that they have no obligation to arbitrate Defendant Debra Sims's claims before the Financial Industry Regulatory Authority ("FINRA").[1]  The case is now before the Court on Plaintiffs' Motion for a Preliminary Injunction ("Motion") [Doc. # 29], seeking a preliminary injunction precluding Sims from proceeding with the FINRA arbitration until her right to arbitration has been decided by this Court.  Defendant filed a Response [Doc. # 34], and Plaintiffs filed a Reply [Doc. # 39].  Having reviewed the full record and the applicable legal authorities, the Court **grants** Plaintiffs' Motion.

---

[1]   Sims is joined in the FINRA arbitration proceeding by 31 other claimants.  By agreement of the parties, Sims is the sole named Defendant and is serving as the representative of the other claimants.

## I.     BACKGROUND

In early 2012, Sims purchased an exchange-traded note ("ETN") called the VelocityShares Daily 2x Long VIX Short Term ETN ("TVIX") on the secondary market through an account at a third-party broker-dealer unaffiliated with Credit Suisse or VLS.  TVIX is designed to provide investors twice the daily return of the S&P 500 VIX Short-Term Futures Index.  Credit Suisse is the underwriter of TVIX, and VLS performs certain services for Credit Suisse AG ("CSAG"), the issuer of TVIX.[2]  Credit Suisse and VLS are both members of FINRA, an industry association that provides an arbitration forum for claims against its members.  FINRA members such as Credit Suisse and VLS agree to comply with Rule 12200, which provides in pertinent part that arbitration is required when requested by a "customer" and the dispute is between the customer and a member and "arises in connection with the business activities of the member."

Sims alleges in the FINRA arbitration proceeding that Plaintiffs made misrepresentations and inadequate disclosures regarding the risks of investing in TVIX in violation of the federal securities laws.  Plaintiffs have filed this lawsuit seeking a ruling that they are not required to arbitrate any of Sims's claims in the

---

[2]     CSAG is neither a party to this lawsuit nor a FINRA member.

FINRA proceeding. Plaintiffs then moved for a preliminary injunction. The Motion has been fully and capably briefed, and it is now ripe for decision.

## II.    STANDARD FOR PRELIMINARY INJUNCTION

To be entitled to a preliminary injunction, Plaintiffs must show (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) their threatened injury outweighs the threatened harm to Sims if the injunction is denied, and (4) that granting the preliminary injunction will not disserve the public interest. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009). Plaintiffs bear the burden of proof on all four factors. *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012). "Because a preliminary injunction is an extraordinary and drastic remedy, the movant must carry his burden of persuasion 'by a clear showing.'" *Stringer v. McDaniels*, 252 F.3d 436, *1 (5th Cir. Mar. 21, 2001) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

"On a motion for a preliminary injunction, the court may consider evidence outside of the pleadings, and a hearing is not required where the facts are undisputed." *Morgan Keegan & Co. v. Shadburn*, 829 F. Supp. 2d 1141, 1145 (M.D. Ala. 2011) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998)); *see also Scanvec Amiable Ltd. v. Chang*, 80 F. App'x 171, 176-77 (3rd Cir. Oct. 15, 2003)

(citing *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990)). In this case, the material facts are not in dispute.

## III. ANALYSIS

### A. Substantial Likelihood of Success on the Merits

In deciding whether Plaintiffs have established a likelihood of success on the merits of their argument that they are not obligated to arbitrate Sims's claims, the Court must first determine whether Plaintiffs have a substantial likelihood of demonstrating that the parties did not agree to arbitrate their dispute. *See Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon*, 695 F.3d 749, 752 (8th Cir. 2012). The FINRA Code, including Rule 12200, constitutes an agreement to arbitrate certain disputes between Plaintiffs and their customers. *See id.* Specifically, Plaintiffs agreed to arbitrate disputes if there is a written agreement between the parties to arbitrate. *See id.* (quoting Rule 12200). It is undisputed that there is no written agreement between Sims and Plaintiffs that requires arbitration of their dispute.

Absent a written agreement to arbitrate, Rule 12200 requires arbitration if requested by a "customer," if the dispute is between the customer and the member, and if the dispute "arises in connection with the business activities of the member" (with exceptions not relevant here). *See id.*; Rule 12200. The dispositive issue in this

case is whether Sims is a "customer" of Plaintiffs for purposes of Rule 12200. Plaintiffs must establish a likelihood of success on the merits of this issue.

FINRA Rule 12100(I) defines "customer" only by stating that a "customer shall not include a broker or a dealer." Courts have rejected the argument that everyone is a "customer" except a broker or a dealer. *See, e.g., Larmon*, 695 F.3d at 752; *Morgan Keegan & Co. v. Silverman*, 706 F.3d 562, 565-66 (4th Cir. 2013).[3] The Fourth Circuit has defined "customer" for purposes of Rule 12200 as "one, not a broker or a dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are regulated by FINRA – namely investment banking and securities business activities." *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 325 (4th Cir. 2013). The Eighth Circuit "construed 'customer' to refer to one involved in a business relationship with a FINRA member that is related directly to investment or brokerage services." *Larmon*, 695 F.3d at 752 (citing *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001)). The Eighth Circuit noted that the term "customer" requires that the

---

[3]   Sims argues that "customer" for purposes of Rule 12200 should be defined to include everyone other than a broker or a dealer because other FINRA Rules define the term in a more specific manner for purposes of those rules. The Fourth Circuit in *Silverman* explicitly rejected this argument. *See Silverman*, 706 F.3d at 565-66. This Court finds the Fourth Circuit's analysis and decision in *Silverman* to be persuasive.

FINRA member provide investment or brokerage services "*to the customer* either directly or through its associated persons." *Id.* at 753 (emphasis in original).

In this case, it is undisputed that Sims did not have a contractual relationship with either Plaintiff, and did not purchase TVIX from either Plaintiff. Instead, Sims purchased TVIX through an account with a third-party broker-dealer unaffiliated with Plaintiffs. It is undisputed that Sims had no contact or relationship with either Plaintiff prior to purchasing TVIX. There was no nexus between Plaintiffs and Sims in connection with her purchase of TVIX.

Sims argues that she benefitted from and is indirectly charged for services Plaintiffs provide to CSAG, the issuer of TVIX. There is no evidence, however, that Plaintiffs were obligated to or in fact did provide services directly to Sims, or that Sims paid Plaintiffs directly for the services they provided to CSAG. The services provided to CSAG may have created a customer relationship between Plaintiffs and CSAG, but they do not create a customer relationship between Plaintiffs and Sims. *See, e.g., UBS Fin. Servs. Inc. v. City of Pasadena*, 2012 WL 3132949, *4 (C.D. Cal. July 31, 2012) (finding customer relationship between Plaintiffs and Defendant who hired them to perform underwriting services); *see also Carilion*, 706 F.3d at 327-28 (finding customer relationship between Plaintiffs and Defendant who entered into broker-dealer and underwriting agreements with them).

The Fourth Circuit's opinion in *Silverman* is directly on point factually and persuasive legally. In that case, the plaintiff (Morgan Keegan) was the underwriter of certain bond funds. The defendants purchased shares of the funds from a third party that was unaffiliated with Morgan Keegan. On those facts, which were nearly identical to those in the case before this Court, the Fourth Circuit held that the defendants were not "customers" of the plaintiff for purposes of Rule 12200 "because the defendants did not purchase commodities or services from [the plaintiff] in the course of its business activities regulated by FINRA." *Silverman*, 706 F.3d at 568. Based on the *Silverman* decision and the other cases cited above, the Court finds on the undisputed evidence that Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim for declaratory relief.

### B.   Irreparable Harm

As discussed above, Plaintiffs have established a likelihood of success on the merits of their claim that they have not agreed to arbitrate Sims's claims because Sims is not their "customer" for purposes of Rule 12200. Plaintiffs will suffer irreparable harm if they are forced to participate in an arbitration where the dispute is not subject to an agreement to arbitrate. *See Shadburn*, 829 F. Supp. 2d at 1153 (and cases cited therein); *Proshares Trust v. Schnall*, 695 F. Supp. 2d 76, 80 (S.D.N.Y. 2010) (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003));

*Koman v. Weingarten/Inv., Inc.*, 2010 WL 3717312, *9 (S.D. Tex. Sept. 17, 2010) (Miller, J.); *Kellogg Brown & Root Servs., Inc. v. Altanmia Commercial Mktg Co.*, 2007 WL 4190795, *16 (S.D. Tex. Nov. 21, 2007) (Rosenthal, J.). As a result, Plaintiffs have satisfied this element of the preliminary injunction analysis.

### C. Balancing of Hardships

Sims asserts that she will be denied her right to arbitrate this dispute if the preliminary injunction is granted, and states that she will be harmed because arbitration is a "speedy and less expensive forum to adjudicate" her claims. *See* Response, p. 19. Even if the Court's ruling that Plaintiffs are entitled to the requested preliminary injunction is erroneous, Sims's ability to arbitrate this dispute will be delayed rather than precluded. "However, in light of [Plaintiffs'] showing of a substantial likelihood of success that [they] cannot be forced to arbitrate the underlying dispute and the irreparable injury that flows from that forced arbitration, the harm to [Plaintiffs] clearly outweighs the harm to [Sims]." *Shadburn*, 829 F. Supp. 2d at 1153. Consequently, the balance of hardships weighs in Plaintiffs' favor.

### D. Public Interest

Sims argues that Plaintiffs agreed through Rule 12200 to arbitrate this dispute, and that public policy favors giving effect to the parties' agreement. "Where a party has not agreed to submit a dispute to arbitration, the public has an interest in ensuring

that the arbitration does not proceed." *Id.* To force a party to arbitrate a dispute absent an agreement to do so "would undermine the longstanding principle that arbitration is a consent-based process through which parties can decide for themselves where and how to resolve a specific set of potential disputes." *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 388 (4th Cir. 2013). "Moreover, compelling arbitration when parties have not agreed to do so would discourage entities from agreeing to arbitrate at all out of fear that such agreements would be stretched too far in the course of judicial construction. This in itself would undermine the federal policy favoring arbitration." *Id.* The Court, therefore, concludes that issuance of the requested preliminary injunction will serve the public interest.

## IV. <u>CONCLUSION AND ORDER</u>

Plaintiffs have made a clear showing that they are likely to prevail on the merits of this declaratory judgment action. Plaintiffs have demonstrated that they will suffer irreparable harm if Sims is not enjoined from continuing with the FINRA arbitration unless and until this Court determines that she is a "customer" for purposes of Rule 12200, that the irreparable harm to Plaintiffs outweighs any harm to Sims if the preliminary injunction is granted, and that the preliminary injunction is in the public interest. As a result, it is hereby

**ORDERED** that the Plaintiffs' Motion for Preliminary Injunction [Doc. # 29] is **GRANTED**.  It is further

**ORDERED** that Sims is **ENJOINED** from proceeding with the FINRA arbitration captioned *Downing, et al. v. Credit Suisse Securities (USA) LLC and VLS Securities LLC*, Arbitration No. 12-04113, pending further order of this Court.  It is further

**ORDERED** that counsel shall appear before the Court on **October 29, 2013, at 1:00 p.m.** for a status and scheduling conference.  The parties shall file their Joint Discovery/Case Management Plan by **October 22, 2013**.

**SIGNED** at Houston, Texas this **4th** day of **October, 2013**.

_____
Nancy F. Atlas
United States District Judge